## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ADAM C. POULTON,**

    **Petitioner,**

    **v.**

**TIM BUCHANAN, WARDEN,**
**NOBLE CORRECTIONAL INSTITUTION,**

    **Respondent.**

**Case No. 2:15-cv-2352**
**Chief Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ*,

Petitioner's *Reply*, and the exhibits of the parties. For the reasons that follow, the Magistrate

Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of

the case as follows:

> On January 10, 2013, Dresden Police Officer Scott Caldwell was
> on routine patrol when he observed an African–American male,
> later identified as Jeffrey Body, enter a residence at 801 Canal
> Street, in an area known for illegal drug activity. Officer Caldwell
> also noticed a Cadillac automobile moving through the area. A few
> minutes later, he returned to the area of the residence and saw a
> number of people in the middle of the street. Officer Caldwell then
> saw Body, with blood on his person, running away from the group
> of people. The officer notified the Muskingum County Sheriff's
> Office for assistance. Body thereafter told investigators that he had
> been jumped and robbed by three or four males. During the
> altercation, Body suffered several broken bones to his face and was
> robbed of his wallet and automobile.

After appellant was apprehended, he was interviewed by Detective Brady Hittle of the Muskingum County Sheriff's Office. The interview was recorded on DVD, as further analyzed infra.

On January 16, 2013, the Muskingum County Grand Jury indicted appellant on the following charges:

1) Aggravated Robbery with a firearm specification and repeat violent offender specification, a felony of the first degree, R.C. 2911.01(A)(1), 2941.145, and 2941.149;

2) Aggravated Robbery with a firearm specification and repeat violent offender specification, a felony of the first degree, R.C. 2911.01(A)(3), 2941.145, and 2941.149;

3) Felonious Assault with a firearm specification and repeat violent offender specification, a felony of the second degree, R.C. 2903.11(A)(1), 2941.145, and 2941.149;

4) Theft (motor vehicle), a felony of the fourth degree, R.C. 2913.02(A)(1);

5) Having a Weapon While Under Disability, a felony of the third degree, R.C. 2923.13(A)(2);

6) Having a Weapon While Under Disability, a felony of the third degree, R.C. 2923.13(A)(3);

7) Theft ($1,000–$7,500), a felony of the fifth degree, R.C. 2913.02(A)(1).

Appellant appeared with his attorney for arraignment on January 23, 2013, at which time he entered pleas of not guilty to all of the aforesaid counts.

On March 26, 2013, appellant's trial attorney filed a written motion to withdraw as counsel. The trial court denied said motion via judgment entry the next day.

Prior to trial, the trial court asked the parties to brief whether certain portions of appellant's statements, made during his interview with Detective Hittle, were admissible under Evid.R. 410, concerning whether the statements may have been made in an effort to obtain a favorable plea. After reviewing the briefs and the DVD of the police interview and conducting a short hearing before

the commencement of the trial, the court ruled that the statements should be admitted. See Tr. at 6–17.

The case proceeded to a jury trial on May 30, 2013. After hearing the evidence and viewing the DVD of appellant's interview with Detective Hittle, the jury returned a verdict of guilty on all charges and specifications.

At sentencing, the trial court found the following counts would merge: Counts One, Two, and Three; Counts Four and Seven; Counts Five and Six; all firearm specifications; and all repeat violent offender specifications. The court also found that Counts One and Two would merge with Counts Four and Seven. The trial court thereupon sentenced appellant to an aggregate prison term of sixteen years.

Appellant herein raises the following two Assignments of Error:

"I. THE TRIAL COURT ERRED IN ADMITTING STATEMENTS MR. POULTON MADE DURING THE COURSE OF PLEA DISCUSSIONS.

"II. THE TRIAL COURT ERRED IN DENYING COUNSEL'S MOTION TO WITHDRAW, LEADING TO DENIAL OF MR. POULTON'S RIGHTS TO COUNSEL OR CHOICE OF COUNSEL."

*State v. Poulton*, No. CT2013-0030, 2014 WL 1341925, at *1-2 (Ohio App. 5th Dist. March 14, 2014). On March 14, 2014, the appellate court affirmed the judgment of the trial court. *Id*. On June 11, 2014, the Ohio Supreme Court declined review. *State v. Poulton*, 139 Ohio St.3d 1420 (Ohio 2014).

On June 11, 2014, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (ECF No. 6-1, PageID# 216.) On August 18, 2014, the appellate court denied Petitioner's Rule 26(B) application. (PageID# 261.) Petitioner filed a motion for reconsideration. (PageID# 268.) On October 9, 2014, the appellate court denied the motion for reconsideration. (PageID# 273.) Petitioner did not file an appeal.

Petitioner also pursued post conviction relief. The Ohio Court of Appeals summarized those proceedings as follows:

> Appellant filed a *pro se* petition to vacate or set aside judgment of conviction or sentence on December 19, 2013. Appellant filed separate motions for the appointment of an expert private investigator and the appointment of counsel to aid in investigating his claims.
>
> Appellant's petition asserts he was denied the effective assistance of trial counsel after the trial court denied his counsel's motion to withdraw as counsel via Journal Entry entered March 27, 2013. Appellant maintains trial counsel "refused to accept calls from petitioner's family, failed to interview or call possible witnesses in petitioner's defense, and failed to prepare or present a defense of petitioner's innocence." Appellant attached affidavits, his own, his aunt, and co-defendant Joseph Roth's, in support of his petition. Appellant's own affidavit avers he attempted to contact counsel "to aide in the petitioner's defense" or contacted the attorney and the attorney failed to follow the leads which "could have proved" Appellant's innocence. Appellant's petition sought the appointment of an expert private investigator to produce the evidence, and appointment of counsel to fully investigate and litigate Appellant's claims.
>
> Appellant also attached the affidavit of Joseph Roth, which averred:
>
> I attempted to contact Attorney Todd Long, on several occasions as to the possibility of my testifying on behalf of the defense in which he represented Adam Poulton, Mr. Long in return failed to contact me in anyway what so ever, even when he was made aware of Mr. Poultons [sic] family that I was one of the Co-defendants, in Mr. Poulton [sic], case and could have helped prove his innocence.
>
> Roth, Affidavit of Truth, 12/10/2013
>
> Via separate judgment entries entered July 9, 2015, the trial court denied Appellant's petition to vacate or set aside judgment of conviction or sentence, motion for expert assistance (private investigator), and motion for appointment of counsel.
>
> Appellant filed a motion for findings of fact and conclusions of law on July 27, 2015.

On August 6, 2015, Appellant filed a notice of appeal to this Court.

Via opinion and judgment entry of March 7, 2016, this Court held in *State v. Poulton*, Muskingum App. No. CT2016–041, 2016–Ohio–901,

[A] judgment entry without findings of fact and conclusions of law is not a final, appealable order. *State v. Evans*, 9th Dist. 10CA0020, 2012–Ohio–1120, citing *State v. Beard*, 9th Dist. No. 07CA009240, 2008–Ohio 3722.

Here, the trial court's July 9, 2015 Judgment Entry denied Appellant's petition for post-conviction relief without making the statutorily required findings of fact and conclusions of law. Pursuant to R.C. 2953.21 and Ohio case law, we find the July 9, 2015 Judgment Entry is not a final appealable order as the entry does not set forth findings of fact and conclusions of law other than denying Appellant's petition for post-conviction relief without a hearing. Accordingly, the appeal is dismissed for lack of a final appealable order.

On remand, the trial court, via Judgment Entry of July 9, 2016, issued findings of fact and conclusions of law, again denying Appellant's petition.

Appellant appeals, assigning as error:

I. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S PETITION FOR POST–CONVICTION RELIEF WITHOUT A HEARING THEREBY DENYING HIM RIGHT TO COUNSEL AND COUNSEL OF CHOICE GUARANTEED BY THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION TEN, OF THE OHIO CONSTITUTION.

II. THE LOWER COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR APPOINTMENT OF COUNSEL AND EXPERT ASSISTANCE THEREBY DENYING HIS RIGHTS TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SIMILAR PROVISIONS OF THE OHIO CONSTITUTION.

*State v. Poulton*, No. CT2016-0023, 2017 WL 90630, at *1-3 (Ohio App. 5th Dist. Jan. 9, 2017). On January 9, 2017, the appellate court affirmed the judgment of the trial court. *Id.* On May 31, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Poulton*, 149 Ohio St.3d 1421 (2017).

On June 8, 2015, Petitioner filed this *Petition* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On August 8, 2016, the Court granted Petitioner's request for a stay pending exhaustion of post conviction proceedings. *Opinion and Order* (ECF No. 24.) On January 24, 2018, the Court terminated the stay and reinstated proceedings, granting Petitioner's motion to amend the *Petition,* except as to the addition of any claims alleging errors in post conviction proceedings. *Order* (ECF No. 39.) Thus, Petitioner's *Amended Petition* asserts that he was denied due process due to improper admission of statements he made during the course of plea negotiations (claim one); that he was denied due process because the trial court refused to permit defense counsel to withdraw after a breakdown in the attorney-client relationship (claim two); and that he was denied the right to the effective assistance of trial counsel because his attorney failed to investigate and interview potential witnesses (claim three).[1] *See Amended Petition* (ECF No. 33.) It is the position of the Respondent that Petitioner's claims are procedurally defaulted or without merit.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court describes the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and

---

[1] The Court will not consider Petitioner's amended claim four, as it raises an issue regarding the trial court's denial of his motion for the appointment of counsel and expert assistance in post conviction proceedings. *See Order* (ECF No. 39.)

emphasizes that federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow,* 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

Under the AEDPA, the factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding").

The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. In order for a federal court to find that a state court's application of Supreme Court precedent was unreasonable, "the state court's application must have been 'objectively unreasonable,' not just incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal citations omitted) (citing *Williams v. Taylor*, 529. U.S. at 409); *see also Harrington v. Richter*, 562 U.S. at 101 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer,* 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d)) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.' " (quoting *Neal v. Puckett,* 286 F.3d 230, 246 (5th Cir. 2002) (en banc)); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal

conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before the state court at the time that it rendered its decision. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011). Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Id*. at 181.

**Claim One**

In claim one, Petitioner asserts that the trial court unconstitutionally admitted statements he made during plea negotiations. The state appellate court rejected this claim as follows:

> [A]ppellant argues the trial court erred in admitting into evidence certain statements he had previously made during plea negotiations. We disagree.

> The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. *State v. Oman* (Feb. 14, 2000), Stark App. No.1999CA00027. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217.

> Evid.R. 410 governs inadmissibility of pleas, offers of pleas, and related statements. Subsection (A)(5) states the following:

> "(A) Except as provided in division (B) of this rule, evidence of the following is not admissible in any civil or criminal proceeding against the defendant who made the plea or who was a participant personally or through counsel in the plea discussions: * * * (5) any statement made in the course of plea discussions in which counsel for the prosecuting authority or for the defendant was a participant and that do not result in a plea of guilty or that result in a plea of guilty later withdrawn."

> In *State v. Frazier* (1995), 73 Ohio St.3d 323, at the syllabus, the Supreme Court of Ohio held as follows in regard to Evid.R. 410:

"In determining admissibility of statements made during alleged plea discussions, the trial court must first determine whether, at the time of the statements, the accused had a subjective expectation that a plea was being negotiated. The trial court must then determine whether such an expectation was reasonable under the circumstances. * * * ''

In making our analysis, the totality of the circumstances must be reviewed. *See Frazier* at 337.

In the case sub judice, the DVD Exhibit reveals that appellant spoke to Detective Hittle after waiving his *Miranda* rights. The detective informed appellant of the potential charges, suggesting that appellant was "possibly" looking at facing a charge of aggravated robbery with a gun specification, felonious assault with a gun specification, and aggravated burglary with a gun specification. Hittle also stated, "but all that could change." Hittle added: "Where I'm at right now, if you want to give your side of the story, then I'm willing to take it, and I'll go meet with [Prosecutor] Mike Haddox, right now after we're done, and come back over and let you know what he has to say." Appellant at first rejected the idea, challenging the existence of a gun at the scene. He also denied that Jeffrey Body had any money on him and insisted one of the other men decided to take Body's car. Appellant then abruptly informed Hittle that he had information regarding an unrelated stash of "ice" (crystal methamphetamine), as well as an unrelated murder case from Guernsey County. Appellant said that "that's what I'm trying to put on the table." Appellant then indicated that if he had done anything, it was just that he had "beat Jeff's ass." But he stopped short of reporting everything he knew. Hittle responded: "Well, I've got to know what I can take to Mike [Haddox] and what I can take to Guernsey County." Appellant, in response, referred to the ice and murder information as "the only two bargaining chips I got." Appellant told Hittle that he did not want the state to "stack" the charges against him. Hittle left the interview room for a few minutes. Upon his return, Hittle indicated the possibility of a sole charge of felonious assault from the prosecutor. Hittle again stated that he would meet with Prosecutor Haddox and return. However, he clearly told appellant he could not do "anything from behind this desk" without talking to the prosecutor. Hittle's final return is not shown on the DVD, although appellant asserts that Hittle came back and offered, on behalf of the prosecutor's office, a deal for a misdemeanor assault charge in exchange for appellant's remaining information.

Although appellant presently urges that Detective Hittle was seeking to make a plea deal on behalf of the prosecutor's office, we reiterate that Evid.R. 410(A)(5) clearly states that a defense attorney or an attorney for the prosecutor must be a participant in the plea discussions in order for the rule to apply. *See, e.g., State v. Meeds,* 2nd Dist. Miami No.2003 CA 5, 2004–Ohio–3577, ¶ 20. We are unpersuaded that Detective Hittle's generalized references to leaving and speaking with the prosecutor made that official a "participant" in a plea deal. Hittle repeatedly communicated to appellant that any such deal would be in the hands of the prosecutor; moreover, the entire interview took place before appellant was booked in the jail or formally indicted. It is well-recognized that the rule is "not intended to be used to hamper police at such an early investigatory stage." *See State v.. Cassell*, 10th Dist. Franklin Nos. 08AP–1093, 08AP–1094, 2010–Ohio–1881, ¶ 65, quoting *State v. Kidder* (1987), 32 Ohio St.3d 279, 285, 513 N.E.2d 311. Furthermore, while the jurors' viewing of the DVD in this instance most likely created the inference that appellant had information about the assault and robbery of Jeffrey Body and that appellant was almost certainly at the scene, we find appellant's further incrimination of himself in the video beyond an unarmed assault is limited at best.

Upon review, we are unable to conclude the trial court abused its discretion in finding appellant did not have a reasonable expectation of a plea deal at the time in question, and thereby declining to strike the DVD of the police interview. We find no basis to vacate appellant's convictions and remand the matter for a new trial.

Accordingly, appellant's First Assignment of Error is overruled.

*State v. Poulton*, 2014 WL 1341925, at *2-4.[2]

---

[2] Judge P.J. Hoffman issued a separate concurring opinion, as follows:

HOFFMAN, P.J., concurs separately.

I concur in the majority's analysis and disposition of Appellant's second assignment of error.

I further concur in the majority's disposition of Appellant's first assignment of error. Unlike the majority, I would find Appellant's statements to Hittle as to what Appellant wanted relayed to Haddox (the prosecutor), followed by Hittle leaving the interview room for the purpose of consulting the prosecutor and coupled with Hittle's statement upon return of the possibility of a single felonious assault charge, all combined to create a reasonable, subjective expectation on Appellant's part a plea was being negotiated with the prosecutor. I find such sufficient to render the prosecutor a participant at that point in time for purposes of the rule even if the prosecutor was not actually contacted.

However, to the extent Petitioner's claim implicates the alleged violation of state evidentiary rules, or state law, it fails to present an issue warranting federal habeas corpus relief. 28 U.S.C. § 2254(a). As a general matter, errors of state law, especially the improper admission of evidence, do not provide grounds for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Giles v. Schotten,* 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. In order to prevail, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles,* 449 F.3d at 704 (citing *Baze v. Parker,* 371 F.3d 310, 324 (6th Cir. 2004)). Stated differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.' " *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)). For the reasons discussed by the state appellate court, the record fails to reflect such circumstances here.

---

However, Appellant's incriminating statements concerning his allegedly limited involvement in the underlying crimes were made prior to Hittle's first leaving the interview room to purportedly go speak to the prosecutor. At that point in time, the prosecutor was not yet a participant. Accordingly, such statements are admissible.

Appellant does not specifically identify in his brief any inculpatory statements made during the video interview in reliance of negotiating a plea. From my review of the video, I find nothing Appellant says upon Hittle's return to the interview room, appears specifically connected to the underlying charges nor provides any additional incriminating statements not previously disclosed prior to Hittle's first leaving the room. As such, any further statements are at best, harmless.

*Poulton*, 2014 WL 1341925, at *5.

Moreover, Petitioner did not raise in the state appellate court any claim of federal constitutional magnitude. In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor,* 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

Here, Petitioner argued in the Ohio Court of Appeals solely that the trial court's ruling violated Rule 410 of the Ohio Rules of Evidence. In support of this claim, he referred only to state evidentiary rules and state law. (See ECF No. 40-1, PageID# 1058-61.) He did not refer to any federal or state cases relying on federal law that would have alerted the state appellate court to the nature of any federal claim. Further, he has failed to establish cause for his failure to present a federal claim to the state appellate court. Therefore, to the extent that Petitioner now

seeks to present an issue of federal constitutional magnitude, he has thereby waived the issue for review in these proceedings.

**Claims Two and Three**

In claim two, Petitioner asserts that he was denied due process when the state trial court denied defense counsel's motion to withdraw based on a breakdown in the attorney-client relationship. Petitioner complains that the trial court forced his attorney to continue to represent him without pay after trial counsel filed a motion to withdraw. In claim three, Petitioner asserts that he was denied the effective assistance of counsel, because his attorney failed to investigate and interview potential defense witnesses. The state appellate court rejected these claims in relevant part as follows:

> Appellant filed a direct appeal from his convictions in *State v. Poulton*, Muskingum App. No. CT2013–0030, 2014–Ohio–1198, appeal not allowed, 2014–Ohio–2487, 139 Ohio St.3d 1420, 10 N.E.3d 739. This Court affirmed Appellant's convictions, and found Appellant's argument with regard to the ineffective assistance of counsel "speculates as to events dehors the record, and therefore is not properly raised in a direct appeal." *Id*.
>
> . . .
>
> [In his *pro se* petition to vacate or set aside judgment of conviction or sentence dated December 19, 2013,] Appellant claims he was denied effective assistance of trial counsel because his trial counsel failed to prepare a defense; failed to return phone calls from himself, his family, and potential witnesses; and failed to interview possible witnesses. Appellant asserts he was denied the counsel of his choice at trial when the trial court denied counsel's motion to withdraw.
>
> A defendant may only seek post-conviction relief for violations of his State and Federal Constitutional rights. Both the United States Constitution and the Ohio Constitution provide for the right to assistance of counsel. The Sixth Amendment to the United State Constitution provides a defendant with the right to the effective assistance of counsel. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to

have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate, but for counsel's errors, the result of the trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

Neither the State nor Federal Constitutions provide the right to counsel of the defendant's choice.

In support of his petition for post-conviction relief, Appellant submitted three affidavits; his own, his aunt, Linda Sowers; and co-defendant Joseph Roth's. We find Appellant's affidavit is self-serving. Affidavits, which merely set forth legal conclusions or opinions without stating supporting facts, are insufficient. *Tolson v. Triangle Real Estate*, Franklin App. No. 03AP–715, 2004–Ohio–2640, paragraph 12. Appellant's self-serving affidavit is insufficient to demonstrate Appellant suffered any prejudice by his counsel's alleged failure. We do not find he was denied the effective assistance of counsel as a matter of law. *State v. Finch*, Licking App. No. 11–CA–1114, 2012–Ohio–4727; *Maluke v. Lake Twp.* 5th Dist.2012CA00001, 2012–Ohio–3661. We find Appellant's suggestion of prejudice as a result of counsel's alleged errors merely speculative.

The affidavit of Linda Sowers avers Appellant had her call Attorney Long a number of times, requesting Attorney Long visit him while incarcerated. She states Appellant had her call Attorney Long to inform him Appellant still had not received "discoveries." Sowers avers Attorney Long returned her call, but stated "he could not run down to Zanesville every time Adam needed to see him, that he had not received payment yet, and that he was filing with the court to dismiss himself from being Adam's Attorney." We find Sowers' affidavit does not, as a matter of law, satisfy the prejudice prong of *Strickland, supra*.

The affidavit of Joseph Roth avers he attempted to contact Attorney Long on several occasions as to the possibility of testifying on behalf of the defense. He states Attorney Long failed to contact him, and, as a co-defendant, he could have helped Appellant be proved innocent. The affidavit of Joseph Roth does not state any specifics about how he would have aided in Appellant's defense, but only generally concludes he could have helped. Such does not demonstrate how Attorney Long's failure to

contact Roth prejudiced Appellant's defense. Even if we accept the affidavit as true, Appellant has not demonstrated how the communication or interview would have changed the outcome of the trial herein.FN2

FN2: Appellant maintains Attorney Long failed to interview witnesses to prepare a defense. Appellant only identifies Joseph Roth as a potential witness, and does not state what the potential witnesses would have testified to at trial.

Following this Court's remand to the trial court for findings of fact and conclusions of law as to the trial court's July 9, 2015 denial of Appellant's petition, the trial court, via Journal Entry of May 9, 2016, made the following finding,

Defendant Poulton has failed to provide any evidence that Attorney Todd Long was less than fully prepared. Also, Attorney Long zealously represented Defendant. The State called approximately ten (10) witnesses. Testimony against Defendant Poulton was overwhelming, reliable and convincing. A review of the trial transcript shows that Defense Counsel was thoroughly prepared for trial. Counsel vigorously, intelligently and effectively cross-examined the State's witnesses. Counsel was prepared with approximately thirteen (13) exhibits. Defense Counsel was clearly not ineffective.

Defendant Poulton provides no credible evidence or reason that with different or better counsel, he would have prevailed at trial.

May 9, 2016, Journal Entry.

The trial court specifically commented Mr. Long represented his client well. Tr. at 359–360.

Appellant does not have a right to counsel of his choice. The trial court denied counsel's motion to withdraw as counsel. However, Appellant did not attempt to retain substitute counsel, although he was free to do so. Appellant was initially represented by court appointed counsel, but retained Attorney Long on his own behalf.

We find Appellant has not demonstrated, but for the alleged failures of trial counsel, the outcome of the trial would have been different.

Based upon the above, we find the trial court did not abuse its discretion in overruling Appellant's motion for expert assistance and appointment of counsel.

Appellant's first and second assignments of error are overruled.

The May 9, 2016 Journal Entry entered by the Muskingum County Court of Common Pleas is affirmed.

*State v. Poulton*, 2017 WL 90630, at *1-5.

The Sixth Amendment right to effective assistance of counsel includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  However, as discussed by the state appellate court, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."  *Gonzalez–Lopez*, 548 U.S. at 151–52 (citations omitted). Here, after initially retaining counsel, according to Petitioner, he could not afford to pay his attorney, and required court-appointed counsel to defend him.   Under these circumstances, Petitioner did not have the right to an attorney of his own choosing.   Additionally, the Constitution does not guarantee a criminal defendant's right to a "meaningful attorney-client relationship." *Morris v. Slappy*, 461 U.S. 1, 13 (1983).

Petitioner claims that he was denied the effective assistance of counsel because his attorney failed to investigate or present defense witnesses.  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the

'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*. "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. In order to establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of *Strickland* in order to demonstrate the ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland,* 466 U.S. at 691. However, "the duty to investigate does not force defense lawyers to scour the globe

on the off chance something will turn up[.]" *Jackson v. Warden, Chillicothe Corr. Inst*., 622 F.

App'x 457, 462 (6th Cir. 2015) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)).

Moreover, in federal habeas corpus proceedings, the Court applies a doubly deferential standard

of review to the appellate court's denial of a claim under *Strickland*. *See Leonard v. Warden,

Ohio State Penitentiary*, 846 F.3d 832, 848 (6th Cir. 2017). "The question is whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. (quoting

*Harrington v. Richter*, 562 U.S. 86, 89 (2011).

Petitioner refers to the Affidavit of Jim Barnard and Amy Poulton in support of his claim.

(ECF No. 43-1, PageID# 1476-77.)[3] However, because Petitioner did not present these

documents to the state courts, this Court will not address them here. (*See* ECF No. 40-1,

PageID# 1204-1215.) Consideration of a claim that was adjudicated on the merits is limited to

the record that was before the state appellate court. *Pinholster*, 563 U.S. at 181. The "backward-

looking language" of 2254(d)(1) "requires an examination of the state-court decision at the time

it was made. It follows that the record under review is limited to the record in existence at that

same time *i.e.*, the record before the state court." *Id*. at 181-82.

> This understanding of the text is compelled by "the broader context
> of the statute as a whole," which demonstrates Congress' intent to
> channel prisoners' claims first to the state courts. *Robinson v. Shell
> Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808
> (1997). "The federal habeas scheme leaves primary responsibility
> with the state courts . . . ." *Visciotti, supra*, at 27, 123 S.Ct. 357.
> Section 2254(b) requires that prisoners must ordinarily exhaust
> state remedies before filing for federal habeas relief. It would be
> contrary to that purpose to allow a petitioner to overcome an
> adverse state-court decision with new evidence introduced in a

---

[3] Barnard purportedly would have testified that Petitioner was at the Putnam Tavern Bar during the time of the crimes charged, where Barnard was working as a bartender. Barnard attempted to contact Petitioner's attorney, but defense counsel never returned his calls. Affidavit of Jim Barnard (ECF No. 43-1, PageID# 1476.) Amy Poulton recanted her testimony against Petitioner, indicating that she lied at trial because police threatened to arrest her and take her children away. (PageID# 1477-78.)

> federal habeas court and reviewed by that court in the first instance effectively de novo.

*Id*. at 182. As discussed by the state appellate court, the record does not indicate that any potential witnesses could have assisted the Petitioner, or that any further investigation by defense counsel, would have assisted the defense.

Claims two and three are without merit.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

_s/ Elizabeth A. Preston Deavers_
Elizabeth A. Preston Deavers
United States Magistrate Judge